AO 102 (01/09)  Application for a Tracking Warrant

# UNITED STATES DISTRICT COURT
### for the
### EASTERN DISTRICT OF MISSOURI

|  |  |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe*<br>*the object or property to be used for tracking)*<br>A WARRANT AUTHORIZING THE INSTALLATION, ACTIVATION<br>AND MONITORING OF A GLOBAL POSITIONING SYSTEM<br>ELECTRONIC TRACKING DEVICE (GPS DEVICE) TO BE LOCATED<br>IN OR ON THE BLACK CHEVROLET CRUZE BEARING MISSOURI<br>LICENSE PLATE GJ0E7C | )<br>)<br>)<br>)<br>)<br>)    Case No.  4:24 MJ 3002 NCC<br>)    SIGNED AND SUBMITTED TO THE COURT FOR FILING BY<br>)    RELIABLE ELECTRONIC MEANS |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __18__ U.S.C. § __922(o)__ . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location.  The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☑ property designed for use, intended for use, or used in committing a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:

A  BLACK CHEVROLET CRUZE, MISSOURI LICENSE GJ0 E7C

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the following is true and correct.

_____
*Applicant's signature*

Special Agent Kirsten Ellerbusch ATF
_____
*Applicant's printed name and title*

Subscribed and sworn before me via reliable electronic means under Federal Rules of Criminal Procedure 4.1 and 41

Date: __01/22/2023 2024__

_____
*Judge's signature*

City and state: __St. Louis, Missouri__

Honorable Noelle C. Collins, U.S. Magistrate Judge
_____
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE INSTALLATION, ACTIVATION AND MONITORING OF A GLOBAL POSITIONING SYSTEM ELECTRONIC TRACKING DEVICE (GPS DEVICE) TO BE LOCATED IN OR ON THE BLACK CHEVROLET CRUZE BEARING MISSOURI LICENSE PLATE GJ0E7C | No. 4:24 MJ 3002 NCC<br><br>**Filed Under Seal**<br><br>SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Kirsten F. Ellerbusch**,** being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device on a Black Chevrolet Cruze bearing Missouri License plate GJ0E7C (hereinafter referred to as the "**subject vehicle**").

2.      Upon information and belief, there is probable cause to believe that the **subject vehicle** is being used by Reginald Smith ("SMITH") in furtherance of violations of  Title 18 U.S.C. Section 922 (o) (possession of a machine gun),  Title 18 U.S.C. Section 922 (a)(1)(A) (unlawfully dealing in firearms), and Title 26 U.S.C. Section 5861(e) (transfer of a firearm in violation of the NFA (hereinafter "the subject offenses").

3.      The United States has been investigating SMITH and others known and unknown in connection with the subject offenses.

4.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.  I have been employed as a Special Agent with the United States Department of Justice since October 2018, currently assigned to the Kansas City Field Division, St. Louis Group 1 Field Office.  Prior to employment with ATF, I was a Detective with the Creve Coeur Police Department (CCPD) in St. Louis, MO.  I was employed with CCPD from 2009-2018.   I currently conduct criminal investigations into cases of illegal/possession/transfer of firearms, firearms trafficking, violent crimes involving firearms and narcotics trafficking and narcotics possession.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     The present affidavit is being submitted in connection with an application of the United States for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to install a GPS monitoring tracker on the **subject vehicle** in an effort to locate locations where SMITH and others known and/unknown are obtaining Machine Gun Conversion Devices (MCDs) and where they are storing the MCDs prior to selling them, and to otherwise lead to evidence of the subject offenses.

7.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that subject vehicle is currently being used in connection with the subject offense by Reginald SMITH and others known and unknown.  There is also probable cause to believe that the location information described in Attachment B to the requested warrant and order will lead to evidence of the aforementioned subject offenses as well as to the

2

identification of individuals who are engaged in the commission of those criminal offense and related crimes.

**PROBABLE CAUSE**

8.     The United States, including ATF, the DEA (Drug Enforcement administration) and the USPIS (United States Postal Inspection Service), is conducting a criminal investigation regarding the commission of the subject offenses by Reginald SMITH and others known and unknown.

9.     In 2023, an ATF Confidential Informant (CI)[1] provided information to investigators relative to a private Facebook chat titled "Errthng FoeSale" where individuals in the St. Louis area were advertising illegal items for sale to include firearms, machine guns, illegal narcotics, and stolen property. The CI invited your affiant's undercover Instagram account to the chat.

10.     On November 28, 2023, your affiant observed a post where an individual utilizing the Facebook moniker "RJ Smith" posted "Switches back in Glocks ones and Arp ones."

---

[1] The CI was working with the ATF for monetary purposes. The CI was deactivated without cause. The CI had a criminal history including stealing, traffic related charges and possession of a controlled substance. The CI's information has been corroborated by this investigation as set forth below.

3



11. Your affiant knows from training and experience that "Switches", "buttons", ar-pins" "drop ins", are a terms utilized to refer to Machine Gun Conversion Devices (MCDs), which are defined as machine guns or machine gun conversion devices. Your affiant was aware from training and experience that MCDs "(switches") have been designed and created solely and exclusively to convert semi-automatic Glock pistols into fully automatic machineguns, which are prohibited by federal law. These devices vary by design and appearance but all, when properly installed on a semi-automatic Glock pistol, will allow the firearm to expel more than one projectile by a single pull of the trigger at approximately 1,200 rounds per minute. Installation of these machine gun conversion devices is fast and simple, requires no technical expertise, and is completed by removing the polymer slide cover plate on a Glock semi-automatic pistol and replacing it with a machine gun conversion device.

12. Your affiant reviewed "RJ Smith's" Facebook account and discovered a post indicating that November 20, was his birthday.

4



13.     Investigators were then able to locate an individual in the St. Louis area with the name "Reginald Eugine Smith" with the same height, weight and date of birth as "RJ Smith." Your affiant reviewed a photograph of SMITH and was able to identify the subject as the same individual pictured in several of the "RJ Smith" photographs. Additionally, while reviewing the publicly viewable Facebook "RJ Smith" your affiant was able to see that most of the photographs were first party photographs and videos of, or including, SMITH.

14.     On November 28, 2023, I, while acting in an undercover capacity, sent "RJ Smith" a message through Facebook asking for a price on "switches."   I provided "RJ Smith" with my undercover phone number for him to contact me on for further communication.

15.     I received a phone call from 314-964-7776.  I answered and the male caller on the other end of the line stated it was "RJ."  Through the phone call and text messages that followed, I arranged to purchase two MCDs for $475 and a Glock firearm for $700.

16.     Notably, for each of the controlled purchases discussed below, I acted in an undercover capacity.

5

**First Controlled Purchase**
**(Purchase Involved Subject Vehicle)**

17.     During the week of December 5, 2023, I initiated a text conversation with the number 314-964-7776 and arranged for the purchase of a Glock pistol and two MCDs I agreed to meet the operator of that phone (later determined to be SMITH) at 1300 N Tucker, St. Louis, MO 63103, the Zoom gas station.

18.     I drove to the meet location in an undercover vehicle (UCV) and parked. I placed a phone call to 314-964-7776.  A male voice answered and told me he would be in the area momentarily. Several minutes later, I received a phone call from 314-250-9116. The male voice told me he was using his friend's phone, but he was in the parking lot in a "blue" Chevrolet Cruze. I observed  a dark Cruze parked behind the UCV, and identified it as the **subject vehicle**. The male voice told me on the phone he would come to the passenger side of the UCV.

19.     I observed a male approach the passenger side of UCV and then enter it. I immediately recognized the subject as SMITH from photographs I had previously reviewed. SMITH provided me with two metal MCDs that were in three different pieces each.  SMITH saw a small bag on the floor of the UCV and helped me put the MCDs in the bag.  I observed SMITH also had the firearm that he had told the UC about (the Glock).  I provided SMITH $1,175 in ATF Agent Cashier Funds (ACF) for the firearm and MCDs.  SMITH then handed the firearm to me and said, "there is one in the head."  I took the magazine out of the firearm and removed the chambered round from the firearm.

20.     The UC asked SMITH if they "fucked with anything else," specifically asked for "ice-cream" which was street terminology for methamphetamine.  SMITH said, "say less,"

meaning he understood what the UC was looking for.  SMITH then exited the UCV and walked back to the **subject vehicle** and enter the passenger side.

21.    Your affiant transported the Glock, model 19 Gen5, bearing serial number BGZX310 and the two MCDs to the ATF St. Louis 1 Evidence Vault. The Glock, model 19 was later test fired.  The MCDs were then sent to the ATF Firearms and Technology branch where they were identified as machine guns.



**<u>Second Controlled Purchase</u>**

22.    On December 11, 2023, while under ATF surveillance, I initiated a text conversation with the phone number 314-964-7776 and arranged for the purchase of a Glock firearm and methamphetamine. During the conversation, I arranged to purchase the Glock firearm for $725 in the area of 2145 Brookfield, Jennings, MO 63136.

23.    I drove in a UCV to 2145 Brookfield, Jennings, MO 63136.  I noticed multiple St. Louis County marked units in the area.  At 2:11 PM, I called SMITH at the same phone number**.**

7

I recognized SMITH's voice during the call. SMITH asked me if that was "the police" out there. I told SMITH that it was and asked what was going on. SMITH told the UC to back up into his driveway. SMITH told the UC the correct address was 2141 Brookfield. I backed the UCV into the driveway of 2141 Brookfield. I observed a black female short red hair, with glasses wearing a purple t-shirt open the front door to 2141 Brookfield. I asked SMITH if he knew the female at the door. SMITH replied that it was his mother. I then disconnected the call with SMITH. I went inside 2141 Brookfield. As I walked in, SMITH's mother said, "he shot a bullet in my fucking floor, that's why they [police] out there like that." I looked at SMITH who was slightly smiling about the comment his mother made. SMITH told me "I was wiping my handprints off."

24.    I provided the UC with a Glock, model 22, .40 caliber pistol, bearing serial number BVKZ406 in exchange for $725 in ACF as well as an additional $30 for the purchase of a grip that SMITH had put on the previous firearm he sold me. While SMITH counted the ACF, I introduced myself to SMITH's mother, who identified herself as "Mika" (she was later determined, via a review of investigative databases to be Tamika Patterson). I then directed my communication to SMITH and referenced our previous conversation about methamphetamine. SMITH replied, "yea, I talked to umm, Nephew." SMITH then looked at Patterson. Patterson then asked, "about the girl?" SMITH told me to talk to "Mika"/Patterson further. I told Patterson I was looking for "ice," *i.e.*, methamphetamine. Patterson told me she had some "girl[2]" and pointed toward a back bedroom. Patterson told me she only had enough for herself, but that she had a good connection. I told Patterson I was looking for a connect who could provide up to a

---

[2] The UC knows from training and experience conducting undercover work that "girl" is coded terminology utilized by narcotics traffickers and users to refer to cocaine.

pound at a time.  I also told Patterson I wanted to purchase a smaller amount first to check the quality of the methamphetamine before buying an entire pound. Patterson asked if "he," pointing to SMITH, had my number. I replied that he did.  Patterson provided the UC with the phone number 314-410-7742.

25.     After the purchase, I transported the firearm to the SLMPD Criminal Laboratory where it was test fired.



**Third Controlled Purchase**

26.     During the week of December 13, 2023, I received two photo messages from the subject cellular telephone. The photographs were of two firearms; the first firearm appeared to be a Glock with an attached MCD, and the second appeared to be a Springfield Armory firearm with a blue magazine. SMITH told me via text message the Glock with the "switch" (MCD) was $1,200 and the Springfield Armory firearm was $600. I agreed to purchase the Glock with the attached switch, however later in the conversation SMITH stated the Glock with MCD was for another individual and he (SMITH) did not believe the person actually wanted to sell the firearm.

27. Based on that information, I decided to purchase the Springfield Armory firearm from SMITH, and arranged to meet on December 13, 2023, to conduct the purchase. I told SMITH I would be meeting with Patterson, SMITH's mother, to purchase the methamphetamine the same day and asked to meet at the same time. SMITH agreed to meet me at Patterson's residence to sell the firearm. SMITH told me he had to give Patterson $150 for him selling the firearm to me on December 11, 2023, so he wanted to do their deal privately and not in the presence of Patterson.

28. I then communicated with Patterson separately to set up a methamphetamine purchase for $200 for one ounce of methamphetamine to occur December 13, 2023.

29. On December 13, 2023, I arrived in a UCV at 2141 Brookfield, Jennings, MO., 63136, and met with SMITH and Patterson. I first met with SMITH who told me he would do their transaction after I purchased the narcotics from Patterson's source. I then drove with Patterson to 9107 Huiskamp, Jennings, MO 63136. Once at the residence, I was introduced to, "nephew" who I later identified as Kevin Burrow, by way of his Missouri driver's license photo. I provided Burrow with $150 in DEA funds in exchange for approximately one ounce of methamphetamine.

30. Patterson and I then left the residence and drove back to 2141 Brookfield. I walked inside and saw SMITH sitting on the couch in the front living room. SMITH escorted me out of the residence and sat in the passenger seat of the UCV, with me in the driver's seat. SMITH produced the black Springfield Armory, model Hellcat, .40 caliber firearm bearing serial number BB5117217 with a magazine with a blue base plate. I handed SMITH $600 in ATF ACF for the purchase of the Springfield Armory, Hellcat firearm.

10

31.     I asked SMITH about purchasing "switches" (MCDs) in the future.  SMITH told me that he and his cousin purchase "10 an order" of multiple colors that were being shipped from China.  SMITH stated he knew the switches were illegal, which was why they only purchased 10 at a time.  I offered to purchase all 10 switches for $2,500 total.  I asked SMITH if he would still make money at that price point and he stated that he would, but he had to split the profits with his cousin.  SMITH also told me he was considering purchasing an AR with a drop in auto sear.  SMITH told me that the switches don't get shipped in his name. SMITH made the statement that he and his cousin are "the main ones in St. Louis selling them."



**Fourth Controlled Purchase**
**(Purchase Involved Subject Vehicle)**

32.     Between December 14, 2023, and December 18, 2023, I continued texting SMITH at 314-964-7776.  We continued discussing firearms and in particular MCDs.

33.     On December 19, 2023, I arranged (via text message) to meet with SMITH to purchase six MCDs and one drop in auto sear for $1,775.00. I met SMITH at 9285 New Halls Ferry Rd, Jennings, MO 63136.  SMITH told me he would meet me there and would be in the same vehicle as the first controlled purchase, *i.e.,* the **subject vehicle**. I arrived in a UCV at the

11

meet location and observed the **subject vehicle** parked along the north side of the parking lot. I observed a male driver with braids wearing a mask in the driver's seat and observed SMITH exiting the passenger side.

34.     SMITH walked to the UCV and entered the front passenger seat. SMITH provided me with five MCDs and an apparent drop in auto sear (MCD for AR style firearms). I asked where the sixth "switch" was, and SMITH told me that "he" (referring to the driver in the **subject vehicle**) had it. SMITH went back to the **subject vehicle**. SMITH came back a minute later and said he did not have it and told me to take $250 from the ACF.

35.     I provided SMITH with $1,525 for the purchase of the MCDs.

36.     SMITH told me that he and his cousin (the driver of the **subject vehicle**) were planning on another order of MCDs in the future. SMITH also told me he had a Glock 43 for sale, and then produced the firearm to show me. SMITH released the magazine and ejected a round of ammunition from the chamber and provided the firearm to me to hold. I handed the firearm back to SMITH. SMITH told me that he would hold the firearm if I wanted it, but to let him know.

37.     Your affiant transported the suspected MCDs to the ATF St. Louis Evidence Vault. The items are pending shipment to the ATF Firearms Technology branch where a firearms classification will be conducted.

  

  

**Additional Information Regarding SMITH's Phone**

38.    On December 27, 2023, the honorable Patricia L. Cohen signed a Precision Location Information and Pen Register Trap and trace for SMITH's phone, 314-964-7776, under case 4:23 MJ 6312 PLC.

39.    On January 2, 2024, I received a text message from 314-942-0798 indicating that was SMITH's new phone number.

**Surveillance of Subject Vehicle**

40.    On January 4, 2024, I reviewed license plate recognition information for the **subject vehicle's** license plate and learned it has hit in the area of 9350 Duenke multiple times, appearing to be parked overnight. I responded to the area and located the **subject vehicle** parked in the driveway of 9349 Duenke.

41.    During surveillance, I did not observe anyone enter or exit the residence or approach the **subject vehicle**.

**Fifth Controlled Purchase**
**(Purchase Involved Subject Vehicle)**

42.    On January 8, 2024, I arranged to meet with SMITH to purchase ten MCDs at 9825 New Halls Ferry Road from SMITH for $2,250.

43.     I arrived on the parking lot of 9825 New Halls Ferry. Moments later I observed the **subject vehicle** traveling south bound on Jennings Station Road, being followed by surveillance units.  Surveillance units first followed the **subject vehicle** to 2141 Brookfield, and observed SMITH get into the **subject vehicle.**  Surveillance units then followed the **subject vehicle** to 9825 New Halls Ferry Road, where a Walgreens was located.

44.     I then observed the **subject vehicle** park next to my UCV. SMITH exited the passenger side of the **subject vehicle** and entered the passenger side of the UCV. SMITH then said "I'm sorry, we was paranoid...the Laws, the police right there."  SMITH then pointed to a marked St. Louis County police vehicle that was unoccupied but parked in the front of the Walgreens.

45.     SMITH then handed me a small plastic bag containing multiple apparent MCDs. I counted the MCDs through the bag, and then SMITH dumped the pieces on his lap for me. SMITH then stated, "Shit my handprints." I offered to assist SMITH and picked up the larger pieces of the MCDs and placed them into the plastic bag.

46.     SMITH only had nine of the MCDs to sell to me. I asked SMITH if he would be willing to come down on the price for the next order of MCDs and SMITH told me he would have to ask "him" (referring to his cousin, who was seated in the **subject vehicle)**.  I provided SMITH $2,260 and requested $10 in change. SMITH did not have change, and instead went inside the Walgreens to obtain change for me. SMITH came back to the UCV and provided me the $10 in change. I told SMITH his cousin made me nervous because he appears paranoid and SMITH told me, "I been doin this for a minute…I don't be nervous." SMITH then counted the money one more time. After he counted it, SMITH told me he had an older cousin with "Draco"

14

for sale and that his cousin wanted $1,200 for the firearm. SMITH told me the firearm was clean (meaning, not stolen) and that the firearm was actually in his "auntie's name."



47.    Following the buy, I provided the suspected MCDs to another ATF Special Agent who transported them to the ATF St. Louis Evidence Vault. The items are pending shipment to the ATF Firearms Technology branch where a firearms classification will be conducted.

**Sixth Controlled Purchase**

48.    On January 16, 2024, I communicated with Patterson via text message and arranged to purchase four ounces of methamphetamine from Burrow through Patterson for $600. At the same time, I was negotiating the sale of a firearm from SMITH via test message.  SMITH told me he would meet me at Patterson's house, 2141 Brookfield so that the controlled purchase of the firearm could take place at the same time as the methamphetamine purchase.

49.    I subsequently purchased approximately four ounces of methamphetamine from Burrow at 2141 Brookfield, paying $550 to Burrow and $50 to Patterson (for brokering the deal).

50.     SMITH was present at Patterson's house.  However, after the methamphetamine purchase, SMITH told me that we would have to go up the street to Lucas and Hunt and New Halls Ferry to obtain the firearm.

51.     I agreed to drive SMITH, and we walked out to the UCV. Once in the UCV, SMITH stated that the individual who had the firearm, "Luh Greg," told him it was going to be another hour before they could meet.  However, SMITH then produced another firearm from his waistband and offered to sell it to me for $550.  I told SMITH I only had $500 but would bring an extra $50 the next time I met with him he if he was willing to sell it now.

52.     I observed the firearm was a Canik55, model TP-PSFL, 9mm pistol bearing serial number 21AT09266. SMITH told me the firearm was in his name, so I had to keep it. I agreed and provided SMITH $500 in exchange for the firearm. I asked SMITH about purchasing more MCDs from him. SMITH told me he would have to talk to his cousin, "DJ", but would ask him to come down on the price point and let me know. SMITH then exited the UCV and went back inside 2141 Brookfield.

53.     After the controlled purchase I provided the firearm to another ATF Special Agent who transported it to the ATF St. Louis 1 Evidence Vault.

**Communication with 314-964-7776**

54.     On January 20, 2024, I received a text message from 314-964-7776. In the message, SMITH told me Just put the order in today bout to add everything up it's 14 buttons n 1 ar pin."

**Conclusion**

55.      As set forth above, the **subject vehicle** was used in the facilitation of at least three recent controlled purchases of the MCDs/firearms in the Eastern District of Missouri.

16

Therefore, there is probable cause to believe that the requested warrant will lead to evidence of the subject offenses, including the location of any MCDs and/or any co-conspirators. As stated above, SMITH appears to be working with other individuals regarding sales of MCDs within the Eastern District of Missouri.

56.     Your Affiant further believes that the requested authorization would be a valuable asset achieving the overall goals of the investigation and assist in a successful prosecution of SMITH and his criminal associates.

57.     The subject vehicle was observed  operating within the Eastern District of Missouri. Based on the facts set forth above, I believe that the **subject vehicle** is presently within the Eastern District of Missouri.

58.     In order to track the movement of the **subject vehicle** effectively and to decrease the chance of detection, I seek authorization to place a tracking device on the **subject vehicle** while it is in the Eastern District of Missouri. Because the driver sometimes parks the **subject vehicle** in driveways and on other private property, it may be necessary to enter onto private property and/or move the **subject vehicle** to effect the installation, repair, replacement, and removal of the tracking device, specifically at 9349 Duenke where the vehicle has been observed parked and has been surveilled at as detailed above.

59.     To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours. Based on the location of the vehicle being parked in a driveway, and the current evidence that supports the driver is involved with the trafficking of machine guns, I am seeking to install/maintain/ and remove outside of daytime hours in order to utilize the cover of nighttime to avoid detection when installing the

17

tracking device. Additionally, the location where the vehicle is parked is adjacent to a busy thoroughfare and can be viewed from the street, therefore, making detection even higher during the daytime hours.

60.    In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to exceed 45 days following issuance of the warrant.  The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

61.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of ATF, DEA, USPIS or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the **subject vehicle** within the Eastern District of Missouri within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the **subject vehicle** after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter 9349 Duenke and/or move the **subject vehicle** to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Eastern District of Missouri

62.    In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

[INTENTIONALLY LEFT BLANK]

63.     I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the ATF, DEA, USPIS and, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant.  These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation.  Sealing these documents will also better ensure the safety of agents and others.


I state under the penalty of perjury the foregoing is true and correct.

Respectfully submitted,

Kirsten Ellerbusch
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF)


Subscribed and Sworn to before me via reliable electronic means under Federal Rules and Procedure 4.1 and 41, this __22nd__ day of January, 2024.

Honorable Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE

20